UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| OSWALDO CRUZ-VASQUEZ; LAZARO FAUSTINO CRUZ-ALDAY; JORGE CRUZ-RIOS; VICTOR MANUEL GONZALEZ-BARTOLON; DAVID LOPEZ-LOPEZ; ZENON JOSE MONTES-LOPEZ; ESTEBAN ORTIZ-VASQUEZ; ROGELIO SANDOVAL-APARICIO; and HERIBERTO VASQUEZ-ORTIZ; <br><br>    Plaintiffs, <br><br>vs. <br><br>SANDERS FARMS, INC.; SANDERS BROTHERS, LLC; and BARTOLO L. HERNANDEZ; <br><br>    Defendants. | Civil Action No.: _____ |

**COMPLAINT**

### I.  PRELIMINARY STATEMENT

1. Plaintiffs are migrant agricultural workers recruited by Defendant Hernandez in Oaxaca, Mexico in 2013 to work for Defendants in and around Toombs County, Georgia.

2. Plaintiffs left their homes and families and spent considerable money and effort to obtain work visas and travel to Georgia to work for Defendants.

3. Defendants violated the FLSA by failing to pay each Plaintiff and other similarly situated workers at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law.

1

4. Defendants also breached Plaintiffs' employment contracts by failing to pay the contractually promised minimum wage for all hours worked.

5. Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, and pre- and post-judgment interest.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to:

   a. 28 U.S.C. § 1331 (Federal Question);

   b. 29 U.S.C. § 1337 (Interstate Commerce);

   c. 29 U.S.C. § 216(b) (FLSA); and

   d. 28 U.S.C. § 1367 (Supplemental).

7. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rules 2.1(a), 2.1(b), and 2.1 (c), because some Defendants are residents of this district, and a substantial part of the events and omissions complained of occurred in this district.

## III.  PARTIES

### Workers

9. At all times relevant to this action, Plaintiffs were H-2A temporary foreign agricultural workers admitted into the United States under the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. § 655.103 *et seq.* and 20 C.F.R. § 655.122 *et seq.* (2015).

10. Plaintiffs' FLSA consent forms are attached as Exhibit A.

<u>Employers</u>

11. At all times relevant to this action, Defendants Sanders Farms, Inc. and Sanders Brothers, LLC ("the Sanders Defendants") were and are corporations in good standing, duly formed under and in accordance with the laws of the State of Georgia. The Sanders Defendants operated from the same location and maintain their principal place of business at 3414 Georgia Highway 147, Lyons, Georgia 30436.

12. The Sanders Defendants have the same registered agent, Ben Alexander Sanders, and may be served with process through him.

13. Defendant Bartolo L. Hernandez may be served with process at 564 Gloria Jean Road, Reidsville, Georgia 30453.

14. The Sanders Defendants operate as an integrated agricultural enterprise and are financially dependent upon one another.

15. Upon information and belief, the Sanders Defendants share employees and operate as one entity.

16. Defendant Sanders Farms is the sales, packing and brand of the enterprise.

17. Defendant Sanders Brothers owns the agricultural lands and is accordingly the farmer of the enterprise.

18. Harvesting onions, cucumber, watermelon, and broccoli was an integral part of the Sanders Defendants' business of growing, marketing, and selling produce in 2013.

19. At all times relevant to this action, Defendants were engaged in the harvesting and production of onions, cucumber, watermelon, broccoli, and other produce in Georgia for sale in interstate commerce.

20. At all times relevant to this action, the Defendants were an enterprise engaged in commerce within the meaning of the FLSA, with an aggregate gross volume of sales or business in excess of $500,000.  29 U.S.C. § 203(s).

21. The Sanders Defendants hired Defendant Hernandez as a crewleader to recruit workers and supervise the harvest of the Sanders Defendants' crops from April through November of 2013.

22. Upon information and belief, the Sanders Defendants arranged with Defendant Hernandez to obtain workers under the H-2A visa program for their 2013 harvest.

23. The Sanders Defendants' actions and role, as detailed below, made them employers of Plaintiffs as defined by the FLSA and the H-2A regulations.

24. The Sanders Defendants directed the work that Plaintiffs were to perform by instructing them in how to pick crops, and, upon information and belief, by directing the fields to be harvested.

25. The Sanders Defendants communicated orders to Plaintiffs indirectly through Defendant Hernandez about the time and place of work that Plaintiffs were to perform.

26. The Sanders Defendants also communicated indirect orders through Defendant Hernandez about the size of the produce that Plaintiffs were to pick.

27. Defendant Hernandez was an employer of Plaintiffs as defined by the FLSA and the H-2A regulations.

28. Defendant Hernandez had a place of business in the U.S., which was listed on the job offer. *See* Ex. B at 2.

29. Defendant Hernandez had a means by which he could be contacted for employment, which was listed on the job offer. *See* Ex. B at 4.

30. Defendant Hernandez supervised Plaintiffs' harvest work.

31. At all times relevant to this suit, Defendant Hernandez was also the Sanders Defendants' employee in 2013 as defined by the FLSA.

32. In 2013, Defendant Hernandez also acted as the Sanders Defendants' agent, and his acts and omissions are attributable to them.

33. All actions taken by Defendant Hernandez as described in this Complaint were within the scope of his agency.

### IV.   THE H-2A PROGRAM

34. The H-2A program was created by 8 U.S.C. § 1188 and is implemented pursuant to regulations found at 20 C.F.R. § 655.122 *et seq.* The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.

35. Employers, or farm labor contractors working for a fixed site employer, must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122. The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States. *See* 20 C.F.R. § 655.121(a)(2).

36. The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted Plaintiffs' H-2A employment contracts. 20 C.F.R. § 655.103(b) (definition of "work contract").

37. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b), and the definition of employer under the FLSA. 29 U.S.C. § 203(g).

38. The H-2A employment contract promised that each worker would earn "an hourly rate of not less than the Adverse Effect Wage Rate." *See* Ex. B at 10.

39. In 2013, the AEWR was $9.78. Ex. B at 5, 21; 78 Fed. Reg. 1,259 (Jan. 8, 2013).

40. As required under the applicable regulations, 20 C.F.R. §655.122(i)(1), 20 C.F.R. § 653.501(d)(2)(v), the H-2A employment contract contained an assurance that Defendants would provide employment for a minimum of three-quarters of the total number of daily hours stated in the job order, the "three-quarters guarantee". Ex. B at 11.

41. The H-2A employment contract also promised to "comply with applicable Federal and State minimum wage . . . migrant and seasonal farm worker and other employment related laws." Ex. B at 9.

## V.    STATEMENT OF FACTS

42. The Sanders Defendants employed Defendant Hernandez to furnish labor to harvest their crops for the 2013 season.

43. At all relevant times, Defendant Hernandez was licensed as a farm labor contractor with the U.S. Department of Labor, License No. C-04-744115-A-15-R.

44. Defendant Hernandez's farm labor contractor license did not permit him to transport or house workers.

45. Upon information and belief, Defendant Hernandez, in consultation with the Sanders Defendants, sought H-2A workers and through an agent filed a job order. Ex. B.

46. In filing the temporary labor certification application, Defendant Hernandez represented to the U.S. Department of Labor that he was an agricultural employer and not a farm labor contractor. Ex. B. at 22.

47. As a condition of obtaining permission to import temporary agricultural laborers, Defendant Hernandez was required to demonstrate available housing.

48. Defendant Hernandez's job order listed as housing, barracks owned by Defendant Sanders Brothers.

49. Defendant Hernandez's job order listed as a work site, property owned or leased by Defendant Sanders Brothers.

50. The Sanders Defendants made it possible for Defendant Hernandez to obtain the U.S. Department of Labor's approval of the job order, by providing a worksite and providing workers' housing.

51. Defendants recruited the Plaintiffs from Oaxaca, Mexico with employment offers to harvest produce in Georgia.

52. Plaintiffs accepted the employment offers.

53. Plaintiffs were employed under the terms of the job order attached as Exhibit B.

54. Defendants subsequently ratified this agreement by employing the Plaintiffs to harvest the Sanders Defendants' crops during the 2013 harvest seasons.

55. Plaintiffs incurred hundreds of dollars of travel expenses and immigration expenses to come to work for Defendants in Georgia.

56. Plaintiffs and others similarly situated paid, at their own expense, visa and processing fees in excess of $200 in order to obtain H-2A visas.

57. To comply with the hiring processes, Plaintiffs and others similarly situated traveled, at their own expense, from their homes in the Mexican state of Oaxaca to the U.S. Consulate in Nuevo Laredo, Mexico, for the consular interview necessary to obtain an H-2A visa.

58. Plaintiffs paid, at their own expense, bus fare in excess of $100 to travel from their hometowns in Oaxaca to the U.S. Consulate in Nuevo Laredo.

59. Plaintiffs were required to pay their own transportation, lodging, and subsistence expenses during their travel from their homes in Mexico to Defendants' operations in Georgia.

60. The expenditures set out in paragraphs 55 through 59 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

61. The expenditures set out in paragraphs 55 through 59 were made before receipt of Plaintiffs' first paychecks.

62. Defendants' failure to reimburse Plaintiffs during the first workweek for the costs described in paragraphs 55 through 59 resulted in Plaintiffs' wages falling below the applicable federal minimum wage and the contractually promised wage for all compensable hours worked in their first week of work.

63. Plaintiffs worked upon farmland owned or controlled by the Sanders Defendants.

64. Plaintiffs harvested onions, cucumber, watermelon, and/or broccoli, rote and repetitive tasks that require little training.

65. The services rendered by Defendant Hernandez did not require special skills, training, or education.

66. The Sanders Defendants directed and controlled the terms and conditions of Plaintiffs' employment:

    a. directly, by instructing Plaintiffs and co-workers in the manner in which they were to pick cucumbers;

    b. directly, by instructing Plaintiffs in how to sort and grade watermelon;

    c. indirectly, by giving orders to Defendant Hernandez on what fields Plaintiffs were to harvest; and

    d. indirectly, by instructing Defendant Hernandez on the size of produce that Plaintiffs were to pick.

67. Upon information and belief, the Sanders Defendants set the piece-rate compensation for Plaintiffs and the amounts to be paid to Defendant Hernandez.

68. The amount of Plaintiffs' piece rate compensation frequently fell below the contractually promised average hourly wage and at times below the Fair Labor Standards Act minimum wage.

69. Plaintiffs' labor harvesting crops was an integral step in the Sanders Defendants' principal business activity of growing, packing, and marketing crops.

70. During the watermelon harvest, Plaintiffs Jorge Cruz-Rios and Esteban Ortiz-Vasquez were employed unloading, grading, and/or packing in the Sanders Defendants' packing facility.

71. Plaintiffs and others similarly situated did not receive payment for all compensable hours worked as required by the FLSA and their H-2A employment contract.

72. Upon information and belief, Defendant Hernandez paid Plaintiffs the piece-rate earnings set by Defendants.

73. Plaintiffs and others similarly situated were paid according to the amount of crops they harvested without regard to the number of hours they worked.

74. Defendants did not supplement the weekly earnings of Plaintiffs and others similarly situated to ensure they averaged at least the FLSA minimum hourly wage or the minimum hourly wage set forth in the H-2A employment contract for all compensable hours worked in the pay period.

75. Defendants failed to pay or provide employment for a minimum of three-quarters of the hours in the work contract, as promised in the H-2A employment contract. Ex. B at 11.

76. As a direct result of Defendants' failure to comply with the three-quarters guarantee in the H-2A employment contract, Plaintiffs' total compensation fell below the guaranteed amount under the contract.

## COUNT I

## FLSA VIOLATION

77. Plaintiffs incorporate each of the allegations in paragraphs 1 through 76 above by reference.

78. This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

79. As detailed in paragraphs 62, 67, 68, and 71 through 76 above, Defendants failed to pay Plaintiffs and others similarly situated at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

80. The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as details in paragraphs 55 through 59 above, which Plaintiffs and others similarly situated incurred primarily for the benefit of Defendants prior to their first weeks of work.

81. Defendants had knowledge of their obligations under the FLSA and willfully failed to comply with them.

82. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and others similarly situated are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than an average of the applicable minimum wage.

## COUNT II

## BREACH OF CONTRACT

83. Plaintiffs incorporate each of the allegations contained in paragraphs 1 through 76 above by reference.

84. This Count sets forth a claim by Plaintiffs and similarly situated workers for declaratory relief and damages for Defendants' breach of the wage provisions.

85. This Count also asserts claims by Plaintiffs Cruz-Vasquez, Cruz-Alday, Cruz-Rios, Gonzalez-Bartolon, Montes-Lopez, and Sandoval-Aparicio for declaratory relief and damages for Defendants' breach of the three-quarters guarantee provision of the parties' H-2A employment contracts, as described above in paragraphs 34 through 39, 53, 54, 62, 67, 68, 71 through 76.

86. Defendants offered employment on the terms and conditions set out in the 2013 job order.

87. Defendant Hernandez, acting as the Sanders Defendants' agent, entered into the H-2A employment contract for the 2013 season with Plaintiffs.

88. Plaintiffs accepted Defendants' offer of employment.

89. The Sanders Defendants are liable on the contract because they fell within the H-2A definition of employer, as set forth in paragraphs 21 through 26, 32, 33, 37 through 42, 45, 48 through 54, 63, 66, 67, and 72.

90. Upon information and belief, the Sanders Defendants set piece-rate compensation levels at such a rate as to violate the wage guarantee of the H-2A employment contract, and failed to augment piece-rate wages when they fell below the applicable contractual minimum.

91. Alternatively, the Sanders Defendants are liable on the contract because they were the undisclosed principals of Defendant Hernandez, their agent, as described above in paragraphs 21 through 26, 31 through 33, 42 through 45, 47 through 50, 54, 65 through 67, and 72.

92. The Sanders Defendants received the benefit of the H-2A employment contract with Plaintiffs by having their crops harvested during the 2013 season.

93. Defendants breached the Plaintiffs' H-2A employment contracts by failing to pay the Plaintiffs the AEWR for each compensable hour of work in a workweek, as set forth above in paragraphs 38, 39, 62, 67, 68, 71, and 72 through 74.

94. Defendants also breached the Plaintiffs' H-2A employment contracts by failing to provide work for a minimum of three-quarters of the hours promised in the work contract, as specified above in paragraphs 36, 40, 75, and 76.

95. As a direct consequence of Defendants' breach of the Plaintiffs'H-2A employment contracts, Plaintiffs suffered economic injury.

96. Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a) Under Count I:

    1. Grant judgment against Defendants and in favor of each Plaintiff in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    2. Award Plaintiffs their costs and attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b) Under Count II:

    1. Declare that Defendants have breached their employment contracts with Plaintiffs as specified in paragraphs 83 through 96 above;

    2. Grant judgment against Defendants and in favor of each Plaintiff, in the amount of each workers' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(c) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(d) Cast all costs upon Defendants; and

(e) Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this __1st__ day of May, 2015,

_/s/_ Dawson Morton____
Dawson Morton
Georgia Bar No. 525985
dmorton@glsp.org
Lisa J. Krisher
Georgia Bar No. 428762
lkrisher@glsp.org
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone: (404) 463-1633
Fax:    (404) 463-1623

*Attorneys for Plaintiffs*